FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 20, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHAN B., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:18-CV-5096-LRS <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 12) and the Defendant's Motion For Summary Judgment (ECF No. 16).

## JURISDICTION

Nathan B., Plaintiff, applied for Title II Disability Insurance benefits (DIB) on October 9, 2014. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on June 9, 2017, before Administrative Law Judge (ALJ) Jesse K. Shumway. Plaintiff testified at the hearing, as did Medical Expert (ME) Reuben Beezy, M.D., and Vocational Expert (VE) K. Diane Kramer. On July 21, 2017, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 45 years old. He has past relevant work experience as a locomotive engineer, electrician apprentice, electrician supervisor, and maintenance supervisor (electrical equipment). Plaintiff alleges disability for a closed period from September 4, 2014, on which date he was 42 years old, until April 12, 2016.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 2**

the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) evaluating the medical opinions of record; 2) discounting Plaintiff's credibility; and 3) in his finding regarding Plaintiff's residual functional capacity (RFC).

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is

not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following applied during Plaintiff's alleged closed period of disability: 1) Plaintiff had "severe" medical impairments, those being history of internal derangement of the right knee, status post-meniscus tear repair surgery (November 2015), and morbid obesity with a body mass index of 45; 2) Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except he required a sit-stand option at will,; he could not climb ladders, ropes, or scaffolds; he could not kneel or crawl; he could only occasionally perform all other postural activities; he could only occasionally walk on uneven surfaces; he could not have concentrated exposure to extreme cold; and he could have no exposure to vibrations or hazards, such as unprotected heights and moving mechanical parts; 4) Plaintiff's RFC precluded him from performing his past relevant work; but 5) it did not preclude him from performing other jobs existing in significant numbers in the national economy as testified to by the VE. Accordingly, the ALJ concluded the Plaintiff was not disabled during the alleged closed period of disability.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 5**

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id.* "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

On September 5, 2014, Plaintiff presented to the Kadlec Regional Medical Center emergency room for knee pain. He denied any known injury and indicated he had a history of gout for which he had previously been seen. (AR at p. 302). The emergency room physician's opinion was that Plaintiff's three weeks of ongoing knee pain was caused by "gouty arthropathy." (AR at p. 304).

Plaintiff first saw Gordon H. Hsieh, D.O., on September 16, 2014. Plaintiff reported to Dr. Hsieh that he injured his knee on or about August 4, 2014, when he jumped off a ladder, landed wrong, and twisted his right knee.[1] (AR at p. 349). Dr.

---

[1] Eventually, August 6, 2014 was the dated settled upon as being when the

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

Hsieh ordered an MRI which was performed on September 22, 2014. (AR at p. 350).

Plaintiff saw Dr. Hsieh again on September 30, 2014. The MRI showed a buckle handle tear of the lateral meniscus, a partial tear of the lateral collateral ligament (LCL), and a partial tear of the anterior cruciate ligament (ACL). Dr. Hsieh recommended surgery for the lateral meniscus tear, but recommended delaying ACL and LCL reconstruction surgery until the Plaintiff regained full range of motion and was able to walk well due to the buckle handle tear becoming unjammed. The doctor opined that Plaintiff needed surgery to be able to walk and bend and extend the knee. (AR at p. 348). In conjunction with the September 30, 2014 visit, Dr. Hsieh completed a Washington Department of Labor and Industries (L & I) "Insurer Activity Prescription Form" in which he indicated there were no restrictions on Plaintiff's ability to sit, stand or walk, although Plaintiff was limited to occasionally lifting 7 pounds, frequently lifting 5 pounds, and occasionally carrying 7 pounds. He further indicated Plaintiff was not released to any work from August 6, 2014 to November 6, 2014. (AR at p. 432).

Plaintiff returned again to Dr. Hsieh on October 20, 2014, who noted that right knee arthroscopy was tentatively scheduled for October 29, subject to L &I approving the surgery. (AR at p. 345).

In December 2014, Dr. Hsieh completed a "Medical Opinion Questionnaire" in which he opined that Plaintiff's physical restrictions consisted of "[l]imited walking on uneven surfaces prior to ACL [r]econstruction [and] will need 4-8 weeks after ACL reconstruction for [r]ehab." (AR at p. 391).

Plaintiff underwent a "Physical Evaluation" by James Opara, M.D., on

---

injury occurred.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 7**

February 21, 2015. Dr. Opara noted that Plaintiff had not yet undergone surgery because L & I had not approved his claim. Plaintiff complained of current painful swelling in his right knee, especially with prolonged standing and walking. Dr. Opara observed the following:

> I noted an obese male in no acute distress. He ambulated into the exam room without any assistance. His gait is normal. He was able to take his shoes off and put them back on without any problem. He was able to climb up and down the exam table without any problem. He has a very mild degree of tenderness on palpation in the right knee joint.

(AR at p. 352). The doctor noted that Plaintiff's range of motion in his knees was "normal" and opined that Plaintiff's prognosis was "good." (AR at p. 353). He further opined there was no limitation in Plaintiff's ability to stand/walk in an eight hour day with normal breaks; no limitation in sitting in an eight hour day with normal breaks; no limitation regarding lifting/carrying; and no limitation in postural activities. (AR at pp. 353-54).

On May 7, 2015, Plaintiff saw Dr. Hsieh for a "new onset of pain 4/10" which was "persistent and constant," and radiated up and down the right knee toward the hip and the ankle. (AR at p. 357). The doctor noted moderate effusion in the right knee; lateral joint line tenderness; Plaintiff did not have full extension of the knee; Lachman test was unstable; stable to varus and valgus stress; and antalgic gait. (AR at p. 357).

On May 14, 2015, Plaintiff had another appointment with Dr. Hsieh. Plaintiff complained of constant aching and sharp pain in his right knee which radiated up and down his leg. Plaintiff advised that on May 10, he had woken up with a swollen knee, took ibuprofen and did heat and cold therapy, and was using a walking stick to ambulate. (AR at p. 355). In conjunction with this visit, Dr. Hsieh completed another L & I "Activity Prescription Form" in which he repeated the restrictions he had set

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

forth in the form he completed on September 30, 2014, but this time indicated Plaintiff was not released to any work for the period from August 6, 2014 to November 6, 2015. (AR at p. 433).

Plaintiff saw Dr. Hsieh again in late October 2015. The doctor noted that Plaintiff had "recently" sustained a second injury to his right knee "and completed the bucket handle tear." As a result, the Plaintiff now had a "full range of motion," whereas previously, "his knee was stuck in the sense that he could not fully extend his knee and had a limp on it." Now, his knee was sliding out about 20 times per day and he had "pain with climbing up and down stairs, squatting, and kneeling," as well as "decreased mobility, joint pain, limping, and popping sensation in the knee." (AR at p. 397).

Dr. Hsieh explained this again in his report dated November 2, 2015 in conjunction with Plaintiff's preoperative visit:

> With the bucket-handle tear, the patient had loss of range of motion. And, just recently, the patient either stumbled or tripped and completed the bucket-handle tear, so it no longer was blocking his range of motion. Before, he did not have full range of motion. Now that the bucket-handle tear is completed, because the patient has instability due to the ACL tear, the instability is much more noticeable because the knee is no longer locked in place. Now, he has pain with climbing up and down stairs, squatting, kneeling, and he has instability symptoms and decreased mobility.

(AR at p. 399).

Surgery was finally performed on Plaintiff's right knee on November 10, 2015. (AR at pp. 386-89).

On February 1, 2016, S. Daniel Seltzer, M.D., performed an independent medical examination of the Plaintiff. Dr. Seltzer noted that Plaintiff had his sutures removed two weeks after surgery and was already in physical therapy by then. He

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

was currently using a walking stick to ambulate and was not due to see Dr. Hsieh for another month or so by which time it was anticipated he was to have completed physical therapy. (AR at p. 416). Dr. Seltzer also noted the following:

> He is not on any pain medication. His knee does not feel unstable at this time. He goes to physical therapy twice a week, doing a variety of exercises. He wears no support braces. He has not been able to return to work. . . . [H]is pain level is negligible at this point. He is using a walking stick for support, although he did not bring it with him.

(AR at p. 416).

Dr. Seltzer reported that Plaintiff's gait was normal; there was no obvious antalgia or limp; Plaintiff could stand on his heels and on his toes; and he could do a squat about two thirds of the way down. (AR at p. 427). Examination of the right knee showed 130 degrees of flexion; full extension; no apprehension; no pain behavior; no evidence of any ligamentous laxity; negative Lachman test; stable ACL; stable posterior cruciate ligament with firm endpoints bilaterally; no evidence of any medial or lateral ligament laxity; no grating or crepitus; no effusion; patella tracked normally with flexion and extension and there was no grating or crepitus or effusion; popliteal regions were within normal limits; and strength was 5/5. (AR at p. 428).

In January 2017, Dr. Hsieh noted that he had released Plaintiff to return to work without restrictions on April 12, 2016. (AR at p. 382 and p. 464).

Plaintiff contends the ALJ "summarily rejected the opinions of Dr. Hsei." This is not an accurate characterization, however. The ALJ accorded little weight to the "Activity Prescription Forms" completed by Dr. Hsei "because other than consultations in November 2014 and May 2015, there is no evidence he was even treating the claimant, and other than stating the claimant had a "limping gait," his examination showed no significant negative findings." (AR at p. 22). In both the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 10**

September 30, 2014, and May 14, 2015 "Activity Prescription Forms," Dr. Hseih indicated there were no restrictions on Plaintiff's ability to sit, stand or walk, notwithstanding the damage to his right knee revealed by the September 22, 2014 MRI. No restrictions on ability to sit, stand or walk is certainly compatible with an RFC for light and sedentary work. Dr. Hseih also indicated that Plaintiff was limited to lifting and carrying no more than seven pounds occasionally. This is compatible with sedentary work which involves lifting no more than 10 pounds at a time (20 C.F.R. § 404.1567(a)), but not with light work which involves lifting no more than 20 pounds at a time and frequent lifting and carrying of objects weighing up to 10 pounds (20 C.F.R. § 404.1567(b)). Nevertheless, Plaintiff testified that his ability to lift was limited to about 20 pounds. (AR at p. 83). He did not assert that he was limited to lifting less than 10 pounds.

Even if one accepts all of Dr. Hseih's assessments at face value, they do not constitute substantial evidence that Plaintiff was disabled- unable to perform any substantial gainful activity- **for a continuous period of 12 months**. In December 2014, the only restriction opined by Dr. Hsieh was that Plaintiff limit his walking on uneven surfaces before and after surgery. This was a limitation which the ALJ specifically incorporated into his RFC finding. There is nothing in the ALJ's RFC finding which is manifestly inconsistent with anything opined by Dr. Hseih. While there may have been periods of time within the 19 plus months closed period of alleged disability when Plaintiff could not have performed any substantial gainful activity, there is not substantial evidence in the record suggesting there was ever a continuous 12 months within that period during which Plaintiff could not perform any substantial gainful activity. The examination findings of Drs. Opara in February 2015 and Dr. Seltzer in February 2016 clearly corroborate this.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

**PLAINTIFF'S TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

According to the ALJ in his written decision:

> [Plaintiff's] injury occurred in August 2014 and he eventually underwent repair surgery in November 2015, but other than two consultations, there is no evidence he was undergoing any treatment. Moreover, while he was noted to have difficulty walking immediately after his injury (slightly antalgic gait and could barely walk), this did not continue, and his later examinations were not particularly abnormal. He testified he used an assistive device after his injury, but confirmed that by January 2016, he was no longer in need of it. Additionally, during this period, he reported that he remained independent in all his activities of daily living, including

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 12**

> household chores and repairs, driving, shopping, and he even testified to fixing a leaky faucet, which would have required him to be on his knees. At the time he filled his application, his only reported limitations included being unable to climb ladders, walk a lot, or carry heavy items. He further estimated at the time, and again in his hearing testimony, that during the adjudication period, he could lift 20 pounds and that sitting was more difficult than standing or walking, and that he did better if he was able to get up and move around.

(AR at pp. 19-20).

These are clear and convincing reasons, supported by substantial evidence in the record, to discount Plaintiff's testimony about the severity of his symptoms and the extent of his limitations. Plaintiff acknowledges he did not have treatment, but asserts it was because L & I did not authorize any treatment. Other than surgery which apparently was eventually approved by L & I, there is no indication in the record of Plaintiff requesting a particular type of treatment which was disapproved by L & I. In his February 2016 report, Dr. Seltzer noted the Plaintiff was not on any pain medication and did not wear support braces, but that he was going to physical therapy twice a week.

At the hearing, Plaintiff acknowledged that in December 2014, he filled out a questionnaire indicating he was unable to climb ladders, walk a lot, or carry heavy items, and that his lifting ability was limited to 20 pounds. (AR at p. 83). Plaintiff testified he could not think of any further limitations. (*Id.*). These limitations are consistent with the RFC determined by the ALJ.

Most importantly, as discussed above, the ALJ noted that none of the physicians who treated/examined Plaintiff during the relevant period stated anything suggesting Plaintiff was unable to perform substantial gainful activity for a continuous 12 months.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

**RFC/VE HYPOTHETICALS**

The ALJ's RFC is supported by substantial evidence in the record. Using that RFC as the basis for his first hypothetical to the VE, the VE identified several jobs in the national economy that the Plaintiff would be capable of performing: small parts assembler, electrical assembler and mail clerk. (AR at pp. 93-94). The VE testified the mail clerk position would still qualify even if the Plaintiff needed to walk around for four to five minutes every hour. (AR at p. 94).

If the Plaintiff were limited to sedentary work, as opposed to light work, including the need to walk around for four to five minutes of every hour, the VE identified additional jobs in the national economy which the Plaintiff could perform: charge account clerk, document preparer and surveillance system monitor, (AR at pp. 96-97).

**CONCLUSION**

ALJ Shumway rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports his decision that Plaintiff is not disabled.

Defendant's Motion For Summary Judgment (ECF No. 16) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 12) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

//
//
//
//
//

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 14**

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ____20th____ day of May, 2019.

  _____*s/Lonny R. Suko*_____
  LONNY R. SUKO
  Senior United States District Judge